# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**TERRY P. GAUDREAU,** *et al.*,            )
                                          )
                  **Plaintiffs,**           )
                                          )
          **v.**                            )       **Civil Action No. 07-1122 (ESH)**
                                          )
**AMERICAN PROMOTIONAL**                    )
**EVENTS, INC.,** *et al.*,                 )
                                          )
                  **Defendants.**           )
_____)

## <u>MEMORANDUM OPINION</u>

This lawsuit arises out of a dispute over the rights to the trademark "TNT

FIREWORKS."  Plaintiffs Terry P. Gaudreau and TNT Fireworks, Inc., who sell consumer and

commercial fireworks in Montana, North Dakota, and elsewhere, have sued American

Promotional Events ("APE"), a nationwide distributor and vendor of fireworks, under the

Lanham Act and Montana and North Dakota trademark law.  APE now moves to dismiss four of

plaintiffs' five claims on laches, statute of limitations, and ripeness grounds.  For the reasons

explained herein, defendant's motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff Gaudreau resides in North Dakota, and his business, plaintiff TNT Fireworks,

Inc., is a Montana corporation.  (Compl. ¶¶ 2, 3.)  Gaudreau claims that he has been selling

consumer fireworks in North Dakota and Montana using the trademark "TNT FIREWORKS"

continuously since at least as early as 1985, and that he has sold commercial fireworks under a

variation of that mark throughout the United States.  (*Id.* ¶¶ 8, 11.)  In October 2006, plaintiff

TNT Fireworks, Inc. registered the "TNT FIREWORKS" trademark under Montana law.  (*Id.*

¶ 9.)  Gaudreau claims that at least as early as 1995 he began using defendant APE as one of his fireworks suppliers, and he alleges that he did business with APE using the name "TNT Fireworks."  (*Id.* ¶ 15.)

Defendant APE, an Alabama corporation with its principal place of business in Alabama, claims that it has been selling fireworks bearing the trademark "TNT" throughout the United States "[s]ince long before [p]laintiffs began selling fireworks" or using the "TNT FIREWORKS" name.  (Compl. ¶ 4; Def.'s Mem. at 2.)  In addition, APE holds the rights to the marks "TNT THE NITE THEATRE" and "TNT," which were registered by the U.S. Patent and Trademark Office ("USPTO") in 1968 and 1988 respectively.  (Def.'s Mem. at 2.)  According to plaintiffs, Ronald Knutson, a former partner of Gaudreau's in the fireworks business, may have wrongly told APE or led them to believe that he owned the rights to the "TNT FIREWORKS" mark allegedly owned by plaintiffs, and, based on this misinformation, Knutson may have conveyed the mark and its goodwill to APE in 2003.  (Compl. ¶¶ 16-18.)  Plaintiffs allege that in 2003 defendant began selling consumer fireworks in North Dakota and Montana using the "TNT FIREWORKS" mark.  (*Id.* ¶ 24.)

In July 2000, defendant APE filed an Intent-to-Use application with the USTPO for the mark "TNT FIREWORKS, INC." for fireworks distributorship services, which received serial number 76/090,310.  (*Id.* ¶ 20.)  As part of its application, APE declared that to the best of its knowledge, no other person or corporation had the right to use the mark in commerce.  (*Id.* ¶ 21.)  In February 2002, plaintiff Gaudreau, plaintiff TNT Fireworks, Inc., Knutson, and Knutson's North Dakota fireworks corporation filed a Notice of Opposition against APE's application with the USPTO Trademark Trial and Appeal Board ("TTAB").  (*Id.* ¶ 22.)  TTAB dismissed

Knutson and his corporation's opposition in March 2004, and it subsequently dismissed both plaintiffs' opposition with prejudice in February 2007. (*Id.*)

On June 22, 2007, plaintiffs filed this action as an appeal of the TTAB dismissal pursuant to Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b). In addition to the TTAB challenge (Count I), plaintiffs' complaint also includes a claim of false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); a claim of fraud on the patent and trademark office under Section 38 of the Lanham Act, 15 U.S.C. § 1120 (Count III); and trademark infringement claims under Section 30-13-333 of the Montana Code (Count IV) and under North Dakota common law (Count V).[1] Plaintiffs request, *inter alia*, injunctive relief forbidding defendant from using the "TNT FIREWORKS" designation in connection with its fireworks business, and they seek an order under 15 U.S.C. §§ 1119 and 1071(b) prohibiting the "TNT FIREWORKS" mark from being registered by APE at the USPTO. (*See* Compl. ¶¶ (A), (C).) Plaintiffs also request money damages for their trademark infringement, fraud on the office, and false designation of origin claims, including treble damages under the Lanham Act and Montana state law. (*Id.* ¶¶ (F), (G), (H).)

Defendant argues that all of plaintiffs' claims except for their challenge to the TTAB ruling under 15 U.S.C. § 1071 must be dismissed as untimely. (Def.'s Mem. at 3.) Specifically, it argues that a three-year statute of limitations applies to state law trademark infringement actions in both North Dakota and Montana, and that because plaintiffs had notice of defendant's use of the contested mark at least as early as 2003, plaintiffs' state law claims, which they first

---

[1]The complaint also names ten unidentified "John Does" as defendants in Counts II, IV and V.

raised in their 2007 complaint, are time-barred.  (*Id.* at 4-5.)  Similarly, defendant argues that

plaintiffs' Lanham Act false designation of origin claim is barred by the doctrine of laches,

which is "presumed" when there is delay beyond the analogous statute of limitations period.  (*Id.*

at 5-6.)  Finally, defendant argues that plaintiffs' fraud on the office claim under Section 38 of

the Lanham Act is premature because APE has not yet procured registration of the "TNT

FIREWORKS, INC." mark with the USPTO.  (*Id.* at 6.)  The Court will address each of these

arguments in turn.[2]

## ANALYSIS

### I.    State Law Infringement Claims

There is no specific limitations period for trademark infringement prescribed by statute in

either Montana, North Dakota, or the District of Columbia.  Without engaging in any choice-of-

law analysis to demonstrate which forum's statutes of limitations would apply to the state law

claims brought in the District of Columbia, defendant argues that Montana's three-year

limitations period for general torts, MONT. CODE ANN. § 27-2-204, applies to plaintiffs' claim for

trademark infringement under Montana law, and that North Dakota's three-year limitations

period for trade secrets misappropriation, N.D. CENT. CODE § 47-25.1-06, applies to the claim

for trademark infringement under North Dakota common law.  (Def.'s Mem. at 4.)  Defendant

contends that because plaintiffs' claims accrued no later than 2003 when they became aware that

defendant was selling fireworks in North Dakota and Montana using the "TNT FIREWORKS

---

[2]After briefing was completed on the motion to dismiss, the Court raised a question as to
the propriety of venue in this district under 15 U.S.C. § 1071(b)(4) and 28 U.S.C. § 1391.
However, because it is clear that defendant APE has now waived any objection to venue under
Fed. R. Civ. P. 12(h)(1), venue is no longer an issue.

trademark," both state law claims are now barred by their respective three-year statute of limitations. (*Id.*)

Setting aside for a moment the question of which statute of limitations applies, plaintiffs' state law infringement claims will not be dismissed as untimely in any event because it has been recognized that "[t]rademark infringement is a continuous wrong and, as such, gives rise to a claim for relief so long as the infringement persists." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526 (10th Cir. 1987) (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir. 1978)). A continuing tort is one that involves "continuing wrongful conduct" and "continuing injury." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002); *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984). The continuing tort doctrine "applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" *Flowers*, 310 F.3d at 1126 (quoting *Page*, 729 F.2d at 821-22); *see also Beard v. Edmondson & Gallagher*, 790 A.2d 541, 547-48 (D.C. 2002) ("[A] 'continuing tort' can be established for statute of limitations purposes by showing '(1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act . . . within the limitation period.'" (quoting *DeKine v. Dist. of Columbia*, 422 A.2d 981, 988 n.16 (D.C. 1980))). Though the Court has not found a District of Columbia, North Dakota, or Montana case specifically addressing the question of whether trademark infringement constitutes a continuing tort, numerous opinions from other jurisdictions that have characterized it as such. *See, e.g.*, *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) (holding that the "well established rule . . . that the statute of limitations does not shield the defendant from liability for wrongful acts

actually committed during the limitations period . . . applies . . . to trademark infringement claims brought under the Lanham Act"); *Brunswick Corp.*, 832 F.2d at 526 ("Trademark infringement is a continuous wrong and, as such, gives rise to a claim for relief so long as the infringement persists."); *James Burrough Ltd.*, 572 F.2d at 578 (same); *Reid, Murdoch & Co. v. H. P. Coffee Co.*, 48 F.2d 817, 817 (8th Cir. 1931) ("Violation of a trade-mark . . . constitute[s] a continuing wrong . . . ."); *Roehrs v. Conesys, Inc.,* No. 3:05-CV-829-M, 2005 WL 3454015, at *3 (N.D. Tex. Dec. 14, 2005) ("In the area of trademarks, a claim is actionable throughout the period of infringement, and is therefore a 'continuous harm.'"); *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1087 (D. Kan. 2000); *Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.*, 88 F. Supp. 2d 188, 196 (S.D.N.Y. 2000); *Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*, 943 F. Supp. 509, 517 (E.D. Pa. 1996); *Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 807 (S.D. Tex. 1996) ("Trademark infringement is a continuing tort in Texas."); *Hester Indust., Inc. v. Tyson Foods, Inc.*. 94 Civ. 391, 1995 WL 113939, at *5 (N.D.N.Y. Jan. 30, 1995); *see also* McCarthy on Trademarks & Unfair Competition § 31:33 ("Usually, [trademark] infringement is a continuing wrong . . . ."); 4 Callmann on Unfair Competition, Trademarks, & Monopolies § 22:31 (same). Accordingly, plaintiffs have a "fresh cause of action so long as the wrong persists." *Hester Indust., Inc.*, 1995 WL 113939, at *5. Because plaintiffs allege that APE continues to use the contested trademark to this day (Compl. ¶ 36), plaintiffs' state law trademark infringement claims are not time-barred.

Defendant insists that even if the claims are not time-barred, the Court must nevertheless decide the statute of limitations issue because the applicable limitations period will limit the

scope of recovery under plaintiffs' state law claims.  (Def.'s Reply at 5.)  It is true that in the

case of a continuing tort a plaintiff may "recover only for injuries attributable to the part of the

continuing tort that was committed within the limitations period immediately preceding the date

on which suit is brought."  *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir.

2004); *see also Shors v. Branch*, 720 P.2d 239, 243 (Mont. 1986) ("In a continuing tort, recovery

may be had for damages accruing within the statutory period preceding commencement of the

action.").  Thus, defendant argues that any potential recovery on plaintiffs' state law claims must

be limited by the North Dakota and Montana three-year statutes of limitations.  Plaintiffs do not

appear to contest defendant's argument as to the Montana claim, but they argue that a six-year

limitations period applies to their North Dakota common law claims.  (Pls.' Opp'n at 4-6.)

   Both parties' statute of limitations arguments are incorrect.  Because there is no

independent basis for federal jurisdiction over plaintiffs' state law infringement claims, those

claims are only properly before this Court based on its supplemental jurisdiction under 28 U.S.C.

§ 1367(a).  When exercising supplemental jurisdiction, a Court "applies the forum state's

choice-of-law rules and the state statute of limitations indicated thereby."  *Trade Fin., Inc. v.

Petra Int'l. Banking Corp.*, 62 F.3d 1454, 1464 (D.C. Cir. 1995); *see also Ideal Elec. Sec. Co.,

Inc. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997) ("When deciding state-law claims

under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the

jurisdiction in which they sit.").  "Because the District of Columbia treats the statute of

limitations as a procedural issue rather than a substantive one, the law of the forum state applies,

as it does with respect to all procedural matters."  *Nix v. Hoke*, 139 F. Supp. 2d 125, 132 n.4

(D.D.C. 2001); *see also Trade Fin., Inc.*, 62 F.3d at 1458 (The D.C. choice-of-law rules "treat

statutes of limitations as procedural, and therefore almost always mandate application of the

District's own statute of limitations." (citing *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C.

1966))); *Reeves v. Eli Lilly & Co.*, 368 F. Supp. 2d 11, 25 (D.D.C. 2005) ("[T]he established rule

states District of Columbia courts will consider a statute of limitation case as a procedural

matter, 'governed by the law of the [filing] forum.'" (quoting *Kaplan v. Manhattan Life Ins. Co.*,

109 F.2d 463, 465-66 (D.C. Cir. 1939))).  Accordingly, it is D.C. law, not Montana or North

Dakota law, that provides the limitations period for plaintiffs' state law claims.

       Like North Dakota and Montana, the District of Columbia has no specific statute of

limitations for a trademark infringement claim, and the Court has not found any D.C. case law

addressing the question.  However, the D.C. Code provides for a three-year limitations period for

all causes of action "for which a limitation is not otherwise specially prescribed" by statute.

D.C. CODE ANN. § 12-301(8).  Absent any contrary indication from the D.C. courts that some

more specific statute of limitations applies to a trademark infringement case, the Court concludes

that the District of Columbia's three-year general statute of limitations applies to plaintiffs' state

law claims.  *Cf. Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 719-720 (9th Cir. 2004)

(applying Montana's three-year general tort statute of limitations to a Montana state law

trademark claim brought in a Montana federal district court).

       In sum, because trademark infringement is a continuing tort, plaintiffs' state law

trademark infringement claims are not time-barred, and defendant's motion to dismiss must be

denied as to these claims.  For purposes of determining the proper time period for any damages

accruing under plaintiffs' state law infringement claims, the District of Columbia's three-year

general statute of limitations applies, and plaintiffs cannot recover damages for infringement that

occurred prior to June 22, 2004.[3]

## II.    False Designation of Origin Claim

Defendant next contends that plaintiffs' false designation of origin claim under Section 43(a) of the Lanham Act is barred by the doctrine of laches.  "In determining whether a plaintiff asserted his Lanham Act claim in a timely manner, courts apply the equitable doctrine of laches because the Lanham Act does not contain a statute of limitations."  *Bliss Clearing Niagra, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 961 (W.D. Mich. 2004) (citing *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985)).  Federal courts have traditionally "referred to analogous state statutes of limitations to determine whether a presumption of laches should apply."  *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) ("Although laches is an equitable defense, employed instead of a time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense [in Lanham Act cases].").  Defendant argues that because plaintiffs' claims arose prior to the analogous three-year state statutes of limitations, their delay in bringing their Section 43(a) claim "is presumptively prejudicial and unreasonable, creating a rebuttable presumption of laches," and it should

---

[3]This statute of limitations analysis is, however, essentially irrelevant to the scope of recovery for plaintiffs' claim brought under Section 30-13-333 of the Montana Code. That provision states that "a person is liable in a civil action brought by the *registrant* under 30-13-335 if the person . . . uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark *registered under this part* in connection with the sale, offering for sale, or advertising of any goods or services."  MONT. CODE ANN. § 30-13-333(1) (emphasis added).  Section 30-13-335 similarly provides that "[a]n *owner* of a mark registered under this part may proceed by suit . . . ."  *Id.* § 30-13-335(1) (emphasis added).  Thus, it is clear that regardless of the statute of limitations for a claim under this provision, plaintiffs cannot use this provision to recover damages for any infringement that occurred prior to its registration of the mark in October 2006.

therefore be dismissed. (Def.'s Mem. at 5 (quoting *Natron Corp. v. Stmicroelectronics, Inc.*, 305 F.3d 397, 409 (6th Cir. 2002)) (internal quotation marks omitted).) This argument is unpersuasive.

The doctrine of "[l]aches is founded on the notion that equity aids the vigilant and not those who slumber on their rights." *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005) (quoting *NAACP v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985)) (alteration in original). To establish laches, the defendant has the burden of proving (1) lack of diligence by plaintiffs, and (2) resulting prejudice to defendant. *See id.* Regardless of whether prejudice is presumed in this case based on the analogous state law statutes of limitation, as defendant argues, defendant's laches argument fails because it is unable to establish plaintiffs' lack of diligence on the facts before the Court. Far from sleeping on their rights, plaintiffs began the process of opposing defendant's use of the "TNT FIREWORKS" mark when they filed their opposition to defendant's USTPO trademark application with the TTAB in 2002, and they have been actively pursuing their opposition since that time. (Compl. ¶ 22; *see* Pls.' Opp'n at 8.) Indeed, in defendant's words, "[n]ot a day has gone by between February 15, 2002 and the present without Gaudreau and [APE] being engaged in litigation concerning the 'TNT FIREWORKS, INC.' mark." (Def.'s Mem. at 6.) Numerous courts have recognized that pursuing an opposition in the USPTO excuses delay in filing suit on a Lanham Act claim. *See, e.g.*, *Floralife, Inc. v. Floraline Int'l, Inc.*, 633 F. Supp. 108, 113 (N.D. Ill. 1985) ("[A] notice of opposition sufficiently informs the registrant of the trademark holder's objections and renders unreasonable any detriment the registrant may suffer in reliance on the plaintiff's delay in filing suit."); *Fin. Co. of Am. v. BankAmerica Corp.*, 502 F. Supp. 593, 596 (D. Md.

-10-

1980) ("[W]here the parties were vigorously involved in disputing the issue of likelihood of

confusion before the TTAB, and the plaintiff had put the defendant on notice of its intention to

pursue an infringement action upon termination of the administrative proceeding, this Court

finds that the five year delay was neither unreasonable nor inexcusable."); *Alfred Dunhill of*

*London, Inc. v. Kasser Distillers Prods. Corp.*, 350 F. Supp. 1341, 1367 (E.D. Pa. 1972) ("While

a successful opposition only acts to prevent registration and not use, as a practical matter, it puts

the defendant on notice that, at the least, the plaintiff is not going to 'sleep on its rights,' and

indeed, in our view, goes even further and puts the defendant on notice that the opposer also

protests its use of the confusingly similar mark."); *c.f. Fourth Toro P'ship*, 88 F. Supp. 2d at

197-98 ("[Plaintiff acted reasonably in first taking action in the Trademark Office . . . .").

Plaintiffs' opposition of defendant's trademark application before TTAB put defendant on notice

that plaintiffs contested its use of the "TNT FIREWORKS" mark, and the doctrine of laches is

therefore inapplicable to this case.

　　　　Moreover, it is well established that laches generally does not apply to bar claims for

prospective injunctive relief. *See Natron Corp.*, 305 F.3d at 412 (Laches "does not prevent

plaintiff from obtaining injunctive relief or post-filing damages."); *Lyons P'ship, L.P.*, 243 F.3d

at 799 ("[I]f the claim is one for injunctive relief, laches would not apply. A prospective

injunction is entered only on the basis of current, ongoing conduct that threatens future harm.

Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine

of laches."); *Tandy Corp.*, 769 F.2d at 366 n.2 (finding that lower court erred in barring

injunctive relief based on laches because denial of injunctive relief required finding "some

affirmative conduct in the nature of an estoppel"); *Reid, Murdoch & Co.*, 48 F.2d at 817

("[W]hile laches may be a ground for denying a right to recover damages [in a trademark action], it will not ordinarily constitute a bar to an injunction for future infringement."); *Johnny's Fine Foods, Inc. v. Johnny's Inc.*, 286 F. Supp. 2d 876, 882 (M.D. Tenn. 2003) ("[L]aches alone would only bar damages for past violations," not injunctive relief.) Here, plaintiffs seek injunctive relief in connection to their Section 43(a) claim, and laches is unavailable to bar such claims.

Accordingly, defendant's motion to dismiss plaintiffs' false designation of origin claim under Section 43(a) of the Lanham Act (Count II) on the basis of laches must also be denied.

## III.   Fraud on the Patent and Trademark Office Claim

Finally, defendant moves to dismiss plaintiffs' fraud on the USPTO claim, brought under Section 38 of the Lanham Act, because defendant has not yet procured registration of the contested mark, as required to support such a claim. (Def.'s Mem. at 6.) Section 38 provides that "[a]ny person who shall *procure* registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby . . . ." 15 U.S.C. § 1120 (emphasis added). Plaintiffs do not dispute -- nor could they -- that defendant has not as of this time procured a registration in the USPTO for the "TNT FIREWORKS, INC." mark. Plaintiffs therefore fail to state a valid claim under Section 38, and their claim must be dismissed.

In arguing that their Section 38 claim is presently "ripe for determination," plaintiffs cite numerous TTAB decisions that have considered allegations of fraud prior to the procurement of a registration. (Pls.' Opp'n at 8.) But, while it may be true that allegations of fraud on the USPTO may be raised *at the TTAB level* prior to the registration of a mark, it is nonetheless clear

that trademark owner must have actually *procured* a federal trademark registration in order for

its deeds to be actionable in federal court under Section 38.  *See Country Mut. Ins. Co. v. Am.*

*Farm Bureau Fed'n*, 876 F.2d 599, 601 (7th Cir. 1989) ("Section 38 makes sense when 'procure'

is taken to mean 'obtain' and little sense when taken to mean 'apply for.'"); *Official Airline*

*Guides, Inc. v. Goss*, 6 F.3d 1385, 1395-96 (9th Cir. 1993) (holding that a claim under Section

38 accrued the day the trademark registration was procured in the USTPO); *Dunn Computer*

*Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 831-32 (E.D. Va. 2001) (holding that

procurement means obtaining a registration, not merely applying for one); *GMA Accessories,*

*Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 242 (S.D.N.Y. 2000) ("[B]y its terms Section 38 . .

. does not apply to trademark applications that have not been registered"); *Bernard v. Commerce*

*Drug Co.*, 774 F. Supp. 103, 109 (E.D.N.Y. 1991) (Section 38 is "inapplicable where a

defendant's trademark has not been registered."), *aff'd*, 964 F.2d 1338, 1342 (2d Cir. 1992); 4

CALLMANN ON UNFAIR COMPETITION, TRADEMARKS, & MONOPOLIES § 22:31 ("A claim for

false or fraudulent trademark registration under § 38 of the Lanham Act accrues at the time when

the registration issues.")

Accordingly, based on the clear language of Section 38 of the Lanham Act, Count III

must be dismissed because defendant has not yet procured a federal registration for the "TNT

FIREWORKS, INC." mark.

## CONCLUSION

For the foregoing reasons, defendant APE's motion to dismiss [Dkt. # 4] is **GRANTED**

**IN PART** as to Count III, and plaintiffs' claim for fraud on the USPTO under Section 38 of the

Lanham Act is **DISMISSED**.  Defendant's motion is otherwise **DENIED** as to Counts II, IV and

V.  A separate order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge


Date: September 28, 2007